IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Katherine Cockman, On Behalf of Herself and All Others Similarly Situated, ,<br><br>    Plaintiff,<br><br>v.<br><br><br>Assignment Desk Works LLC, and Shawn Moffatt<br><br><br><br>    Defendant. | C/A NO.: 2:19-cv-3082-BHH<br><br><br><br>**JOINT MOTION FOR COURT APPROVAL** |

Plaintiffs Katherine Cockman ("Cockman"), Alexis Berg ("Berg"), and Haley Sarvis ("Sarvis") and Defendants, Assignment Desk Works, LLC ("ADW"), and Shawn Moffatt("Moffatt") (collectively "Defendants") (Defendants and Plaintiffs collectively "Parties") hereby file this Memorandum in Support of their Joint Motion for Approval of Settlement, requesting that the Court approve the Parties' Memorandum of Mediated Settlement Conference (Ex 1) as well as the Settlement Agreement and Release. (Ex 2) In support of the motion, the Parties offer the following:

### I. PROCEDURAL HISTORY

This action was initially filed on October 30, 2019, by Cockman. (ECF No. 1) Cockman alleged violations of the overtime and retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. §201, et seq, (FLSA). She also alleged the Defendants breached her employment contract. Opt-In Plaintiff Berg joined the action on February 6, 2020. (ECF No. 16) Cockman and Berg filed a Motion for Conditional Class Certification on April 22, 2020, which was granted by the Court

1

on May 3, 2021. (ECF No. 18, 49) Opt-In Plaintiff Sarvis filed a Notice of Joinder on August 5, 2021. (ECF No. 56) The Parties filed cross motions for summary judgement. The Court granted Plaintiff's motion on the issue of liability and granted Defendants' motion as to Patrick Bryant's individual liability. (ECF No. 49). Plaintiffs filed Motion to Toll the Statute of Limitations for Sarvis based on procedural delays caused by the COVID-19 pandemic, which the court granted. (ECF No. 62). The case was set for jury selection on February 7, 2023. (ECF No. 64). The Court referred this matter to mediation and appointed United States Magistrate Judge Molly H. Cherry on October 11, 2022. (ECF No. 63). The Parties conducted mediation on January 9, 2022, and reached the below settlement with respect to the FLSA, retaliation, and breach of contract claims. The Parties now seek Court approval of the settlement.

## II. FACTUAL BACKGROUND

The Defendant ADW is a "middleman" in the video production industry. The company provides a service for video production crews and clients. ADW books freelance production crews for video shoots and charges a percentage to both the crews and the clients for this service. Plaintiffs were Production Coordinators ("PC") for ADW. Their primary job duty was to book the shoots that generated revenue for ADW. In addition to working forty (40) hours Monday through Friday the PCs were required to be "on call" after work hours and on weekends. The Defendants do not dispute that the PCs worked over forty (40) hours and were not paid overtime. However, the Defendants claimed that the Plaintiffs and other PCs were exempt from overtime pursuant to the administrative exemption. 29 U.S.C. § 213(a)(1). The Defendants argued that the PCs were properly classified as working in an "administrative capacity" because they performed work

directly related to management or general business operations. This Court disagreed holding that the PCs did not perform work directly related to the management or general business operations of ADW, but rather performed the day-to-day carrying out of ADW's business—namely, brokering video shoots between video production crews and clients and were entitled to overtime. *Cockman v. Assignment Desk Works LLC*, Civil Action No. 2:19-cv-3082-BHH, 2021 U.S. Dist. LEXIS 84268, at *27 (D.S.C. May 3, 2021). Cockman alleged that when she complained about the Defendants' failure to pay her overtime, she was terminated in violation of the anti-retaliation provisions of the FLSA. The Defendants adamantly deny that they engaged in retaliatory conduct, rather they contend Cockman was terminated for cause.

### III. PROPOSED SETTLEMENT

The proposed Settlement Agreement in this case is the product of extensive, arms-length settlement negotiations. The Parties initially mediated the case in August of 2021 with mediator Amy Gaffney. However, that mediation was unsuccessful. The Parties mediated the case a second time on January 9, 2023, with Judge Cherry and reached an agreement to resolve Plaintiffs' FLSA claims, as well the retaliation and breach of contract claims. After substantial negotiations, the Defendants agreed to pay Plaintiffs and their attorney the total gross settlement amount of sixty thousand five hundred sixty-nine dollars and five cents. ($60,569.02). Under the terms of the settlement, each Plaintiff will be paid for twenty (20) hours of overtime during the weeks they were scheduled to be on-call, plus a portion of their liquidated damages. The calculations are based on an overtime premium at 50% of their regular rate for all hours worked over 40. *See e.g., Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682

(1942); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 353 (4th Cir. 2011). The Defendants also agreed to pay Plaintiff Cockman emotional distress damages with respect to her retaliation claim. Although Plaintiffs contend it would be possible for them to receive a higher recovery at trial, it would also be possible for Plaintiffs to receive less after trial. Furthermore, Defendants contend that the grant of summary judgment as to Plaintiffs' misclassification would be appealable after the entry of Final Judgment. Considering these risks, Plaintiffs made a reasonable decision to settle this case for the amounts set forth below:

1. Cockman $12,500 in unpaid overtime and liquidated damages
2. Berg $5,569.05 in unpaid overtime and liquidated damages
3. Sarvis $2500 in unpaid overtime and liquidated damages
4. Cockman $12,500 for emotional distress damages associated with her retaliation claim.

Lastly the gross settlement amount includes the payment of twenty-seven thousand and five hundred dollars ($27,500) in attorneys' fees and costs of which four thousand seven hundred forty dollars and twenty cents ($4,740.20) are costs. The provisions of the Release and Settlement Agreement have been jointly drafted by the undersigned and counsels after exchanging several drafts of the agreement containing different versions of proposed language. The Parties ultimately agreed that the language contained in the proposed agreement is fair and adequate to its signatories.

## I. LEGAL ANALYSIS

**1.     Standard of Review**

There are two ways that wage claims arising under the FLSA can be settled. *Lynn's Food*

*Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). First, the Secretary of Labor is authorized to supervise payment to employees of unpaid wages. Id. at 1353. The second way is when a current or former employee(s) files a private lawsuit against their employer and presents a proposed settlement to the court. Id. The court can enter a judgment after scrutinizing the settlement for fairness. Id. Settlements are permissible in lawsuits because employees are represented by an attorney who can protect their rights under the statute. Id. at 1354. Thus, when the parties submit a settlement to the court for approval, the settlement is likely to reflect a reasonable compromise of disputed issues rather "than a mere waiver of statutory rights brought about by an employer's overreaching". Id.

"Although the Fourth Circuit has not directly addressed the factors to be considered in deciding motions for approval of [FLSA] settlements, district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Edelen v. Am. Residential Servs.*, 2013 WL 3816986, at *10 (D. Md. July 22,2013). *Lynn's Food Stores* discussed four considerations in determining whether to approve an FLSA settlement:

1. Was the settlement achieved in an adversarial context?
2. Was the Plaintiff represented by attorneys who can protect their rights?
3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?
4. Is the settlement fair?

Id. at 1354. The Parties' Settlement in this case satisfies *Lynn's Food Stores'* requirements for FLSA settlement approval. Accordingly, the Parties respectfully request that this Court approve the Settlement Agreement and implement its terms.

i. The settlement was achieved in an adversarial context

The settlement is the result of contested litigation. Although the Court decided the issue of liability in the Plaintiffs' favor, the Parties dispute the number of uncompensated hours that the Plaintiffs worked. Legitimate questions exist as to the hours worked by Plaintiffs because the Defendants did not keep records of the time that the PCs worked when they were on call. *See Lee v. Vance Executive Protection, Inc.*, 7 Fed.Appx. 160, 165-166 (4th Cir. 2001) ("While we acknowledge that the [employees] need not prove each hour of overtime work with unerring accuracy or certainty, enough evidence must be offered so that the court as a matter of just and reasonable inference may estimate the unrecorded hours.") (internal quotations omitted). Plaintiffs contend they regularly worked twenty (20) overtime hours they were not paid for during the weeks they were on-call. The Defendants contend that the Plaintiffs salary was intended to cover all hours worked. Both Parties adamantly litigated their positions. Accordingly, the Court should conclude that the proposed Settlement was the product of contested litigation.

ii. <u>Both Parties are represented by experienced attorneys who have protected their rights.</u>

Plaintiffs are represented by experienced employment attorney who has protected their rights. Plaintiffs' Counsel Marybeth Mullaney ("Mullaney") has been practicing law since 1993. (Ex 2 - Decl Mullaney ¶ 3) Mullaney has had her own practice since 2011 which focuses exclusively on representing employees. (Ex 3 -Decl Mullaney ¶ 8) Mullaney has been class counsel in several collective actions under the FLSA over the past ten (10) years and she has obtained favorable results for her clients. (Ex 3 -Decl Mullaney ¶ 10). Consequently, counsels' experience litigating FLSA claims weighs in favor of approving the settlement.

==Rene can you fill this in?== Defendants are represented by an experienced employment attorney who likewise has protected their rights. Rene Stuhr Dukes has worked in the legal field since

6

1986 and has been an attorney since 2009. She previously practiced law with Rosen Hagood, LLC, before joining the firm of Hall Booth Smith, P.C. Ms. Dukes has successfully defended employment actions, including claims brought under the FLSA. Consequently, defense counsel's experience likewise weighs in favor of approving the settlement.

   iii.   <u>The settlement reflects a reasonable compromise over disputed issues.</u>

The settlement represents a reasonable compromise. If the Plaintiffs are successful at trial and on appeal, then Defendants would face the prospect of a significant monetary verdict in favor of the Plaintiffs. Yet if the Defendants are meritorious at trial and on appeal, then the Plaintiffs could recover less money than they are currently being offered.

If this action continues, the Parties will face the uncertainty of a jury trial. Furthermore, even if the Plaintiffs prevail on liability, they face the difficulty of proving the number of overtime hours they worked each week. The Settlement is a reasonable compromise when viewed against the risks, expenses, and delays inherent in continued litigation. Immediate payment of substantial amounts to class members is available here and reasonable "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road.'" *Gilliam v. Addicts Rehab Crt. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys.of LA v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)). Continued litigation is going to be complex and lengthy. The agreed upon settlement amount allows the Plaintiffs to receive their unpaid wages very soon rather than having to wait a year or two *with no guarantee*. Accordingly, the duration of further litigation weighs in favor of approving the Parties' proposed settlement.

   iv.   <u>The settlement is fair.</u>

The settlement amount fully compensates the Plaintiffs for twenty (20) hours of overtime a week as well as a portion of their liquidated damages, for two years from when they joined the lawsuit. A jury could award them less than twenty (20) hours of overtime. Also, the Plaintiffs' recovery of two years of their alleged full back wages will not be diminished by Defendants' payment of Plaintiffs' Counsel's attorneys' fees and costs as such were negotiated separately and distinctly from the underlying claims and only after a full agreement was reached between the Parties as to the underlying claims.

**2. Plaintiffs' Counsel is entitled to Reasonable Attorneys' Fees and reimbursement of costs.**

The FLSA contains a mandatory fee-shifting provision, which provides that "the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow reasonable attorney's fees to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The goal of a statutory award of attorneys' fees and costs is to "ensure access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). For purposes of recovery of attorneys' fees and costs, a "prevailing party" is one who has "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Id. Although payment of attorneys' fees and costs to employees prevailing under the FLSA is mandatory, "[t]he amount of the attorney's fees . . . is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).

The amount of Plaintiffs' fee entitlement should generally be determined according to the well-established lodestar calculation method. See, eg., *Eckerhart*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Under the lodestar method, the reasonable hours devoted to

the litigation are multiplied by a reasonable hourly rate to arrive at a base hourly recovery, or "lodestar." *Chrapliwy v. Uniroyal, Inc*., 670 F.2d 760, 765 (7th Cir. 1982), cert. denied, 461 U.S. 956 (1983). The lodestar amount is generally considered the presumptively reasonable fee. See *Alexander S. v. Boyd*, 929 F. Supp. 925, 932 (D.S.C. 1995), aff'd mem. 89 F.3d 827 (4th Cir. 1996). A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A*., 559 U.S. 542, 552 (2010). According to the Supreme Court, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." Id. The lodestar amount may be adjusted upward or downward to account for exceptional circumstances, such as the results obtained or the quality of the representation. Id.

The Fourth Circuit has also provided clarity as to the standard for determining a reasonable figure for attorneys' fees. See *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir. 1978) (adopting factors in *Johnson v. Georgia Hwy Express, Inc*., 488 F.2d 714 (5th Cir. 1974)). The factors for attorney fee petitions enumerated by the Fourth Circuit in *Barber* have even been expressly incorporated into Local Civil Rule 54.02, D.S.C., which states that "[a]ny petition for attorney's fees shall comply with the requirements set forth in *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir. 1978)." Local Civil Rule 54.02, D.S.C. As the Fourth Circuit's holding in *Barber* adopted the factors of the Fifth Circuit from the case of *Johnson v. Georgia Hwy Express, Inc*., 488 F.2d 714 (5th Cir. 1974), *Johnson* is relevant in determining an award of fees as well. In *Barber*, the Fourth Circuit held the following factors to be considered in determining a reasonable attorneys' fee:

1) The time and labor expended;
2) The novelty and difficulty of the questions raised;
3) The skill required to properly perform the legal services rendered;

4) The attorney's opportunity costs in pressing the instant litigation;
5) The customary fee for like work;
6) The attorney's expectations at the outset of the litigation;
7) The time limitations imposed by the client or circumstances;
8) The amount in controversy and the results obtained;
9) The experience, reputation and ability of the attorney;
10) The undesirability of the case within the legal community in which the suit arose;
11) The nature and length of the professional relationship between attorney and client; and
12) Attorneys' fees awards in similar cases.

Local Civ. Rule 54.02(A) (D.S.C.); *Barber*, 577 F.2d at 226, n.28.

Plaintiffs' Counsel requests and Defendants' Counsel has agreed to pay $27,500 in attorneys' fees and costs. This includes $4740.20 in costs and $22,759.80 in fees. This figure represents approximately 30% of Plaintiffs' Counsel's actual total lodestar amount, exclusive of costs, and is a product of significant arms-length negotiations. (See Ex. 3 – Mullaney Declaration).

    A. Time and Labor Required (the First *Barber* Factor)

As to the first *Barber* factor, the time and labor expended, Plaintiffs' Counsel has spent considerable time and labor in litigating this case. The law firm representing the Plaintiffs has expended more than 242 hours prosecuting this case. (Ex. 3, ¶14) The lodestar amount for this time spent is $89,684.70 inclusive of costs.[1] Id. The hours spent prosecuting this case were necessary due to the vigorous defense Defendants asserted in this case. Moreover, the requested fee represents a negotiated reduced amount of Plaintiffs' counsels' actual lodestar.

---

[1] Detailed time and billing records, as well as records of costs incurred, are available at the Court's request.

B. Skill Required: The Experience, Reputation, and Ability of the Attorneys (the Third and Ninth *Barber* Factors)

As this court has held, "[e]mployment law is a very dynamic area of the law, requiring counsel to stay abreast of developments in both state and federal law." *DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624, at *31 (D.S.C. Dec. 6, 2013). Plaintiffs' Counsel's law practice focuses exclusively on plaintiff-side employment law matters. (Ex. 3, ¶ 8). Plaintiffs' Counsel has handled numerous wage and hour cases. (Ex. 3, ¶ 9). Plaintiffs' Counsel has represented hundreds of employees in complex employment cases, including FLSA collective actions and class action cases. (Ex. 2, ¶ 10) Thus, Plaintiffs' Counsel has the experience, knowledge and reputation to warrant the fees she is requesting.

C. Preclusion of Other Employment (the Fourth *Barber* Factor)

Plaintiffs' Counsel has been precluded from accepting and working on other matters as a result of the substantial time and resources devoted to the investigation, litigation, and negotiation required to achieve and implement the settlement. As previously noted, Plaintiffs' Counsel spent over 242 hours litigating the case on behalf of the Plaintiffs. Such a vast time commitment represents a significant opportunity cost in terms of other cases, either hourly or contingency, on which Plaintiffs' Counsel could have worked. In addition, Plaintiffs' Counsel also agreed to advance the costs of this litigation on a contingency basis, since Plaintiffs did not have the financial ability to pay the costs associated with this case.

D. The Customary Fee for Like Work (the Fifth and Twelfth *Barber* Factors)

The hourly rate included in the attorneys' fee calculation should be the "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169,

174 (4th Cir. 1994). The determination of a market rate is an important factor in finding a reasonable hourly rate. *Westmoreland Coal Co. v. Cox*, 602 F.2d 276, 289 (4th Cir. 2010) (citing and quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "The fact Plaintiff seeks actual billing rates used for all clients strongly favors a finding the rates are per se reasonable." *Miller v. HSBC Fin. Corp.*, 2010 WL 2722689, at *2 (D.S.C. July 9, 2010) (citing *Liberty Mutual Insurance Company v. Employee Resource Management, Inc.*, 176 F. Supp. 2d 510 (D.S.C. 2001)). Under a lodestar analysis, Plaintiffs' Counsel's requested fee is reasonable and appropriate. The hourly rates proposed by Plaintiffs' Counsel here ($350 per hour) is in line to what other lawyers charge for similar work. Moreover, case law from similar cases in the District of South Carolina indicates that the rates requested by Plaintiffs' Counsel are within the range of reasonable rates for class and collective action matters of this nature. See *South Carolinians for Responsible Government v. Krawcheck*, 2012 WL 2830274 (D.S.C.) (Court allowed hourly rates of $425, $385, and $275); *Faile v. Lancaster Cty.*, 2012 U.S. Dist. LEXIS 189610 (D.S.C. Mar. 8, 2012) (Court awarded hourly rate of $410 and total fees of $500,000 to prevailing party in wage and hour case); *Savani v. URS Prof'l Solutions LLC*, 2014 WL 172503 (D.S.C. Jan. 15, 2014) (Court allowed $400 hourly rate and total fees of $729,000 in employment case). More recently, in August 2015, Judge Seymour approved hourly rates of $750.00 per hour, $650.00 per hour, and $450.00 per hour to plaintiff's counsel in an action brought under the FLSA and the SCPWA. *McClaran v. Carolina Ale House Operating Co., LLC*, 2015 U.S. Dist. LEXIS 112985 (D.S.C. Aug. 26, 2015). The requested hourly rates are reasonable for an FLSA collective action case in the District of South

Carolina. Therefore, a lodestar analysis further demonstrates the reasonableness of the requested fee.

### E. Whether the Fee Is Fixed or Contingent (the Sixth *Barber* Factor)

None of the Plaintiffs have been charged any monies for any of the fees or costs in this matter, either before or after the Settlement was reached. Plaintiffs are not in a financial position to have retained counsel to pursue their unpaid wages, on an hourly basis. The requested fees and reimbursement of costs represent the only compensation available to Plaintiffs' Counsel. The only expectation Plaintiffs' Counsel had in this this case, from the outset, was that they could recover their costs and a reasonable fee.

### F. Time Limitations Imposed by the Client or Circumstances (the Seventh *Barber* Factor)

Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989); see also *Doucet ex rel. Doucet v. Chilton Cnty. Bd. of Educ.*, 65 F. Supp. 2d 1249, 1262 (M.D. Ala. 1999). The very nature of employment cases requires long and intense hours, great risk of no payment of attorneys' fees at all, or, under the best of circumstances, late payment received long after the work has been accomplished. Finally, the potential for any wage litigation defendant to argue the statute of limitations places an importance on moving as quickly as possible to develop and file a case.

### G. The Amount in Controversy and Results Obtained (the Eighth *Barber* Factor)

The Fourth Circuit has held that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Here the monetary settlement will compensate each Plaintiff for 100% of their respective alleged unpaid overtime for 2 years, and then some of their liquidated damages. As Judge Seymour recently held, "[i]n evaluating the results obtained for the class, courts have considered whether plaintiffs would receive a substantial percentage of their back pay amount." *McClaran,* 2015 U.S. Dist. LEXIS 112985, at *9. The proposed settlement in this case would provide the Plaintiffs with 100% of their back pay amount under a two-year statute of limitations. Plaintiffs will receive additional amounts, as set forth in the Settlement Agreement. This is well within the range of reasonable recoveries for the Plaintiffs.

    H.  The Undesirability of the Case (the Tenth *Barber* Factor)

As Judge Harwell has observed when approving a settlement and attorney's fees request in an FLSA class action, "employment cases do not appear to be eagerly sought out by the majority of the plaintiff's bar in South Carolina, because of the difficulty of the cases and the complexity of the issues usually involved." *DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624, at *27 (D.S.C. Dec. 6, 2013). Courts have also recognized that the financial burden and time demands of complex or novel cases make them in some sense "undesirable" to be undertaken on a full contingency fee basis. *In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993). As noted, this case, like almost all complex or novel cases, has provided no immediate or guaranteed income. See *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036,1046-47 (N.D. Cal. 2008) ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving

complicated legal issues, is a significant factor in the award of fees."). Moreover, given the substantial hurdles to recovery, there has been a substantial risk that the Plaintiffs, and thus Plaintiffs' Counsel, would recover nothing at all for this portion of the litigation. Therefore, Plaintiffs' Counsel knowingly undertook a significant risk by prosecuting this case, and this, too, supports the fee request. See *Omnivision*, 559 F. Supp. 2d at 1047 (noting that nationwide, plaintiffs have "won only three of eleven such cases to reach verdicts since 1996").

   I. Nature and Length of the Professional Relationship between Attorney and Client (the Eleventh *Barber* Factor)

The undersigned represented Plaintiffs throughout the course of this litigation.

## **CONCLUSION**

Thus, for the reasons discussed above, Plaintiffs and Defendants respectfully request that this Court enter an Order approving the Settlement Agreement and dismissing this case with prejudice.

Respectfully submitted,

| | |
|---|---|
| s/Marybeth Mullaney | s/ Rene Dukes |
| Marybeth Mullaney FID 111685 | Rene Dukes |
| Mullaney Law | Hall, Booth, Smith, PC |
| 652 Rutledge Ave, Suite A | 111 Coleman Boulevard, Suite 301 |
| Charleston, South Carolina 29403 | Mount Pleasant, SC 29464 |
| P: (843) 588-5587 | P: (843) 720-3460 |
| marybeth@mullaneylaw.net | RDukes@hallboothsmith.com |
| *Attorney for Plaintiffs* | *Attorney for Defendants* |

February 8, 2023
Charleston, South Carolina